UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BERNADETTE LIONETTA and CHERYL WALLACE,<br><br>  Plaintiffs,<br><br>v.<br><br>INMARKET MEDIA, LLC,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)  No. 1:24-cv-11170-JEK<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**KOBICK, J.**

This is a putative class action lawsuit against InMarket Media, LLC. The plaintiffs, Bernadette Lionetta and Cheryl Wallace, allege that InMarket used its software, embedded on third-party mobile applications that they had downloaded, to improperly collect and sell their geolocation data without their informed consent. Pending before the Court is InMarket's motion to dismiss the amended complaint for lack of personal jurisdiction or for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and (6), respectively. For the reasons that follow, InMarket's motion will be denied. The Court has specific jurisdiction over InMarket because it has purposefully availed itself of the Commonwealth's market by selling data from Massachusetts consumers and then sending targeted advertisements to those Massachusetts consumers on behalf of companies in the Massachusetts market; the plaintiffs' claims arise out of, or relate to, InMarket's contacts with Massachusetts; and the exercise of jurisdiction over InMarket is fair and reasonable. The plaintiffs also plausibly allege claims for unjust enrichment and a violation of M.G.L. c. 93A.

1

## BACKGROUND

The following facts are recounted as alleged in the amended complaint, supplemented with the jurisdictional evidence submitted in connection with the motion to dismiss. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Defendant InMarket Media is a data aggregator and digital marketing company that collects consumers' personal data through either its own mobile applications or its Software Development Kit ("SDK"), which can be embedded in third-party applications. ECF 22, ¶¶ 1, 3, 25, 31-32, 44. This data includes information about app users' purchasing history, demographics, socioeconomic background, and movements over time. *Id.* ¶¶ 26, 54. The data also includes precise information about users' locations. *Id.* ¶ 45. Brands and retailers then buy that data from InMarket to produce targeted advertisements for those users in an effort to get them to buy their products. *Id.* ¶¶ 5-7, 28-29, 54-62. InMarket determines which advertisements are displayed in its affiliate applications and allows advertisers to send push notifications based on a consumer's precise location. *Id.* ¶ 60. Since 2017, InMarket's own apps have been downloaded onto more than 30 million unique devices, and InMarket SDK has been incorporated into more than 300 third-party apps, which have, in turn, been installed on over 390 million unique devices. *Id.* ¶¶ 32, 44.

Plaintiffs Lionetta and Wallace are both Massachusetts residents who downloaded and repeatedly used third-party applications with InMarket SDK—such as CVS, Stop & Shop, and Dunkin' apps—while in the Commonwealth. *Id.* ¶¶ 10-13; ECF 31-1, ¶¶ 2-3; ECF 31-2, ¶¶ 2-3. Lionetta and Wallace did not, however, provide InMarket with their informed consent to share and monetize their historic and real-time location data it received from those third-party applications. ECF 22, ¶¶ 2, 14; ECF 31-1, ¶ 4; ECF 31-2, ¶ 4. InMarket and affiliate applications containing InMarket SDK did not adequately inform consumers about how their data will be used. ECF 22,

¶¶ 48-49, 51-53. Nor could developers of such applications provide proper disclosures, because InMarket likewise fails to sufficiently inform them about its conduct. *Id.* ¶ 50. InMarket ultimately receives "substantial revenue" by collecting and selling consumers' Massachusetts-based data. *Id.* ¶ 21.

The plaintiffs initiated this putative class action lawsuit in May 2024. ECF 1. The amended complaint, filed in October 2024, asserts two claims: unjust enrichment (Count I) and a violation of M.G.L. c. 93A, §§ 2 and 9 (Count II). ECF 22, ¶¶ 85-116. The plaintiffs seek to represent a class of "[a]ll residents of Massachusetts whose Personal Information was collected by [InMarket] without their informed consent." *Id.* ¶ 74. InMarket moved to dismiss the amended complaint for lack of personal jurisdiction or for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and (6), respectively. ECF 29. After the plaintiffs opposed that motion and InMarket filed its reply brief, the Court held a hearing and took the motion under advisement. ECF 31, 34, 43.

## DISCUSSION

### I.   Personal Jurisdiction.

InMarket first moves to dismiss the amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In considering such a motion, the Court may use one of three methods to assess whether the plaintiffs have met their burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method, which the parties agree applies here, is the method "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether the plaintiffs have "proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d

3

at 34. It is not sufficient for them to "'rely on unsupported allegations in [their] pleadings.'" *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). They "must go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted). The Court will give "credence to the plaintiff[s'] version of genuinely contested facts," *Baskin-Robbins*, 825 F.3d at 34, and will consider the defendant's proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

In a diversity case such as this one,[1] the plaintiffs must ordinarily show that the Court's exercise of jurisdiction over InMarket meets the requirements of the Commonwealth's long-arm statute, M.G.L. c. 223A, § 3, and the constitutional minimum demanded by due process. *See Rosenthal*, 101 F.4th at 94-95. But where, as here, the defendant's personal jurisdiction defense is based solely on constitutional grounds, "the court need only consider those particular grounds." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022).[2] "Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum [State] that the maintenance of the suit is reasonable, in the context of our federal

---

[1] The Court has diversity jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2)(A). The amount in controversy exceeds $5 million. ECF 22, ¶ 16; ECF 1-1. And while both named plaintiffs reside in Massachusetts, InMarket is not a citizen of the Commonwealth. ECF 22, ¶¶ 10, 12; ECF 19; ECF 30-1, ¶ 3. After engaging in the "iterative" process of "trac[ing] the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be," the Court concludes that none of the members of InMarket is a citizen of Massachusetts. *Berkley Nat'l Ins. Co. v. Atl.-Newport Realty LLC*, 93 F.4th 543, 549 (1st Cir. 2024) (quotation marks omitted); *see* ECF 19; ECF 30-1, ¶ 3.

[2] While InMarket recognized that the Massachusetts long-arm statute is not coterminous with due process limits on personal jurisdiction, it raised only constitutional arguments and thus waived any statutory objection. ECF 30, at 6-15; *see Motus*, 23 F.4th at 122 ("[O]bjections to personal jurisdiction may be waived."); *Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023) ("[T]he reach of the Massachusetts statute is not congruent with the reach of the Due Process Clause[.]"); *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017) (same).

4

system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co.*, 592 U.S. at 358 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

The plaintiffs contend that this Court has specific, not general, jurisdiction over InMarket. *See id.* at 358-60 (distinguishing general and specific jurisdiction). In a specific personal jurisdiction case, the exercise of jurisdiction over the defendant satisfies due process if the plaintiffs can "show that (1) [their] claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

A. Relatedness.

The plaintiffs have established that their claims arise out of, or relate to, InMarket's activities in Massachusetts. To demonstrate relatedness for their unjust enrichment and Chapter 93A claims, the plaintiffs "must show a nexus between [those] claim[s] and [InMarket's] forum-based activities." *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023) (quotation marks omitted). Plaintiffs Lionetta and Wallace both aver that they downloaded and used third-party applications while in Massachusetts, that those applications apparently have InMarket SDK and

5

are used by InMarket to track their and other consumers' locations, and that they never consented to InMarket's collection and sale of their geolocation data. ECF 31-1, ¶¶ 2-4; ECF 31-2, ¶¶ 2-4. The amended complaint similarly alleges that InMarket aggregated and sold such data from Massachusetts consumers, including the plaintiffs, to brands and retailers so that it could display targeted advertisements for those same consumers. ECF 22, ¶¶ 2, 5-7, 10-14, 20-24, 28-29, 54-62. InMarket did not, therefore, merely make its tracking software accessible in Massachusetts. *See Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018). Rather, InMarket "knew that it was serving [Massachusetts] customers" like the plaintiffs while profiting from their location data. *Plixer*, 905 F.3d at 9; *see also, e.g., Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025) (en banc) (finding relatedness because defendant's "installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries"); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 355 (4th Cir. 2020) (finding relatedness where defendant "directly profited from a substantial audience of Virginia visitors" by "collect[ing] personal data as they visited [his] Websites," selling that "data and advertising spaces on the Websites," and allowing "location-based advertising in order to . . . solicit repeated visits").

This case is more akin to *Rancourt v. Meredith Corporation*, No. 22-cv-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024), as the plaintiffs suggest, than *Egan v. X-Mode Social, Inc.*, No. 23-cv-11651-DJC, 2024 WL 2701967 (D. Mass. May 24, 2024), as InMarket urges. In *X-Mode*, the relatedness requirement was not met because the plaintiff alleged merely that the defendant harvested "Massachusetts app users' geolocation data" and sold that data to third parties, not that it targeted those "users with advertisements to promote the further collection and disclosure of Massachusetts-based data." 2024 WL 2701967, at *5. By contrast, in *Rancourt*, the

6

Court found relatedness because the defendant's "use of advertising and content curation that targets individual Massachusetts residents . . . increases user engagement with the App, thus allowing [the defendant] to collect and disclose more of users' information." 2024 WL 381344, at *10. Here, too, InMarket allegedly determines which advertisements display in third-party applications embedded with its SDK and permits advertisers to send push notifications based on a consumer's geolocation data. ECF 22, ¶¶ 5, 60. For example, a Massachusetts consumer using an affiliate application with InMarket SDK may see a targeted advertisement for cold medicine or toothpaste if they walk within 200 meters of a local pharmacy in the Commonwealth. *Id.* ¶ 60. The plaintiffs' claims thus arise out of InMarket's contact with the plaintiffs' Massachusetts-based devices, which contain apps embedded with InMarket SDK, and InMarket earns revenue from retailers who buy advertisements precisely because they can target Massachusetts consumers more likely to shop in their Massachusetts-based stores. *See Briskin*, 135 F.4th at 760. On these facts, "there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 592 U.S. at 365 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

      B.     <u>Purposeful Availment.</u>

The plaintiffs have likewise established that InMarket purposefully availed itself of the Massachusetts market. To meet this requirement, they must identify "'some act by which [InMarket] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Rosenthal*, 101 F.4th at 96 (quoting *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010)). The inquiry focuses on the voluntariness of InMarket's actions—that is, whether InMarket's contacts with Massachusetts resulted from its own actions—and the foreseeability that its connection with Massachusetts might

7

cause it to be haled into the Commonwealth's courts. *See id.* In the analogous context of a website, the First Circuit has explained that a plaintiff must "sho[w] that the website either specifically targets the forum or has resulted in the defendant's knowing receipt of substantial revenue from forum residents." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020).

The plaintiffs allege that InMarket targets consumers in Massachusetts through affiliate applications with its SDK and derives "substantial revenue" by monetizing the geolocation data of those same consumers. ECF 22, ¶¶ 5, 21-24, 60. InMarket notably does not dispute this assertion about its revenue from the Commonwealth. Its Chief Accounting Officer, Deniece Kennedy, does attest, however, that InMarket and developers of applications with its SDK have not focused specifically on Massachusetts, that "InMarket has no direct contact" with consumers of third-party applications, and that none of those applications is based in Massachusetts. ECF 30-1, ¶¶ 7-9. But the relevant question is whether InMarket "deliberately used" its software in the applications "to target" the plaintiffs while they were in Massachusetts. *Kuan Chen*, 956 F.3d at 61. The amended complaint answers that question in the affirmative by alleging that InMarket selects what advertisements are displayed in its affiliate applications and allows advertisers to send push notifications based on a consumer's location. ECF 22, ¶ 60. Accordingly, InMarket's "voluntary service of the [Massachusetts] market and its not insubstantial income from that market show that it could have 'reasonably anticipated' being haled into [this] court." *Plixer*, 905 F.3d at 10; *see UMG Recordings*, 963 F.3d at 354 (finding purposeful availment where defendant "facilitate[d] targeted advertising by collecting and selling visitors' data" and "earn[ed] revenues precisely because the advertising [was] targeted to visitors in Virginia"); *Rancourt*, 2024 WL 381344, at *8-10 (same where "the App had nearly 55,000 Massachusetts users" and defendant not only "earned over $66,000 or 2% of the App's total U.S. ad revenue from Massachusetts devices" but also

"use[d] the information it collect[ed] to tailor advertisements and content to increase user engagement").

In addition, the record reveals that InMarket is registered to do business in Massachusetts and has an appointed "resident agent" for service of process in the Commonwealth. ECF 31-4, 31-5, 31-6; *see* M.G.L. c. 156C, § 51 (requiring a "[r]esident agent for service of process on [a] foreign limited liability company"). Chief Accounting Officer Kennedy also attests that, while InMarket is a Delaware LLC based principally in Texas, nine of its approximately 345 employees work remotely in Massachusetts. ECF 30-1, ¶¶ 3, 6. InMarket's physical presence in Massachusetts provides further support for finding purposeful availment. *See Cossaboon*, 600 F.3d at 37 ("Corporate registration . . . adds some weight to the jurisdictional analysis[.]"); *Kuan Chen*, 956 F.3d at 55, 58 (considering whether a defendant has a "physical presence in the Commonwealth" such as "a registered agent" for purposes of personal jurisdiction); *accord UMG Recordings*, 963 F.3d at 352.

InMarket protests that it has merely placed its SDK in the stream of commerce. In "the prototypical stream-of-commerce case," entities "cannot necessarily predict or control where downstream their products will land." *Plixer*, 905 F.3d at 8. Here, however, InMarket allegedly has embedded its software in third-party applications knowing that it would obtain geolocation data from consumers in Massachusetts, and InMarket has allegedly used and sold that data to target those same Massachusetts consumers. ECF 22, ¶¶ 21-22, 60. The plaintiffs further allege that InMarket can, and does, monitor in real time where its SDK is being used. *Id.* ¶¶ 20, 22-24; *see Rancourt*, 2024 WL 381344, at *9 (unlike a stream-of-commerce case, defendant "can track where the App is being accessed, based on the geolocation information it collects, and therefore can easily predict where its App is being used and where they might be reasonably haled into court").

9

Reflecting its "intent to serve the forum," InMarket "knew that it was serving [Massachusetts] customers and took no steps to limit its [software's] reach or block its use by [those] customers." *Plixer*, 905 F.3d at 8-9. At this early stage, the plaintiffs have adequately demonstrated that InMarket has purposefully availed itself of the Massachusetts market.[3]

    C.    <u>Reasonableness.</u>

The final element is whether the exercise of jurisdiction over InMarket would be fair and reasonable. That inquiry requires consideration of the following factors: "'(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.'" *Baskin-Robbins*, 825 F.3d at 40 (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 69 (1st Cir. 2014)). Courts employ a "sliding scale" approach, with the importance of this multi-factor reasonableness inquiry varying with the strength of the plaintiff's showing on the relatedness and purposeful availment inquiries. *Id.* In all events, the purpose of applying these factors is "to aid the court in achieving substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

InMarket does not identify, let alone contest, any of these factors. Instead, it argues that the exercise of specific jurisdiction would be unreasonable because, in its view, the plaintiffs fail to establish relatedness and purposeful availment. The Court has already concluded, however, that InMarket has purposefully availed itself of the Massachusetts market and the plaintiffs' claims

---

[3] InMarket's reliance on *X-Mode* is also misplaced. In *X-Mode*, the Court found no purposeful availment because, unlike here, the defendant "ha[d] no presence in Massachusetts," did not "specifically targe[t] Massachusetts," and "never used location data to identify or interact with app users in Massachusetts." 2024 WL 2701967, at *5.

arise out of, or relate to, its contacts with the Commonwealth. Given that these five "factors rarely seem to preclude jurisdiction where relevant minimum contacts exist," *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 166 (1st Cir. 2022) (quotation marks omitted), InMarket has not met its "burden of establishing that the exercise of jurisdiction would be unreasonable," *Plixer*, 905 F.3d at 12.

The factors, in any event, favor the exercise of jurisdiction. First, the fact that InMarket is based in Texas and has no offices in Massachusetts does not mean that it would be burdened by litigating in the Commonwealth. ECF 30-1, ¶¶ 3, 5. Because "it is 'almost always inconvenient and costly for a party to litigate in a foreign jurisdiction,'" the First Circuit has recognized that "a defendant 'must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Rodríguez-Rivera*, 43 F.4th at 166 (quoting *Nowak*, 94 F.3d at 718). InMarket has not made that showing or specified any burden associated with appearing in Massachusetts. *See Pritzker*, 42 F.3d at 64 (modern travel "creates no especially ponderous burden for business travelers"). Second, Massachusetts "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Third, some deference is owed to the plaintiffs' choice of forum, *see Baskin-Robbins*, 825 F.3d at 41, and it would be most convenient for the plaintiffs to litigate this matter in Massachusetts, where they both reside. Neither party addresses the remaining two factors. Assuming those factors weigh in favor of neither party, subjecting

InMarket to litigation in this forum comports with traditional notions of fair play and substantial justice. Accordingly, the exercise of jurisdiction over InMarket would not offend due process.[4]

## II.     Sufficiency of the Plaintiffs' Claims.

InMarket alternatively moves to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In evaluating such a motion, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### A.     Unjust Enrichment Claim.

InMarket contends that Count I fails to plausibly allege an unjust enrichment claim under Massachusetts law.[5] "Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 588-89 (2024) (quoting *Sacks v. Dissinger*, 488 Mass. 780, 789 (2021)).

---

[4] Having concluded that this Court has specific jurisdiction over InMarket, the Court need not reach the plaintiffs' alternative theory that InMarket has consented to personal jurisdiction by registering to do business in Massachusetts and appointing a registered agent for service of process in the Commonwealth.

[5] The parties agree that, in this diversity jurisdiction action, Massachusetts law provides the substantive rules of decision as to the plaintiffs' claims. *See* ECF 30, at 16-19; ECF 31, at 11-17. The Court accepts that agreement as reasonable and will apply Massachusetts law. *See Klauber v. VMware, Inc.*, 80 F.4th 1, 10 (1st Cir. 2023).

To sustain their unjust enrichment claim, the plaintiffs must allege that "(1) [they] conferred a measurable benefit on [InMarket], (2) [they] reasonably expected compensation from [InMarket], and (3) [InMarket] accepted the benefit with knowledge of [their] reasonable expectation." *Id.* at 589. InMarket argues that none of these elements are met. The Court disagrees.

The plaintiffs plausibly allege that they conferred a measurable benefit upon InMarket through its collection and sale of their location data. True, the plaintiffs did not "directly" confer that benefit because they allegedly downloaded third-party applications with InMarket SDK that, in turn, transmitted their data to InMarket to monetize. ECF 30, at 16-17; ECF 34, at 4; *see* ECF 22, ¶¶ 11, 13, 87-89. But the relevant question is whether InMarket received a benefit from the plaintiffs at all, not whether that benefit was directly received. *Columbia Plaza Assocs.*, 493 Mass. at 589; *see Massachusetts v. Mylan Lab'ys*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005) ("Unjust enrichment does not require that a defendant receive direct payments from a plaintiff." (citing *Greenwald v. Chase Manhattan Mortgage Corp.*, 241 F.3d 76, 81 (1st Cir. 2001))). Indeed, "liability for unjust enrichment . . . may extend to recipients who were not responsible for wrongful conduct," where "these so-called innocent parties have benefited directly due to the harm one person has tortiously perpetrated against another." *Sacks*, 488 Mass. at 790. The involvement of the affiliate applications does not, therefore, preclude InMarket's liability because InMarket allegedly received the plaintiffs' geolocation data, albeit indirectly, and profited from that data.

The plaintiffs also adequately allege that they reasonably expected InMarket to compensate them for their location data. Specifically, the amended complaint alleges that their "privacy has been invaded," and that they have "unwittingly conferred a benefit upon" InMarket through their "valuable personal location information" and "received nothing" in return. ECF 22, ¶¶ 9, 87. In the Chapter 93A context, the Supreme Judicial Court has recognized "an invasion of the

13

consumer's personal privacy" as a cognizable injury, where a merchant improperly obtains a consumer's zip code and discloses that "private information on the open market" "for a profit." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 504 & n.20 (2013). In such cases, "[d]isgorgement of the merchant's profits" can be "an appropriate means of calculating damages." *Id.* at 504 n.20.

The plaintiffs in this action similarly seek restitution from InMarket as a remedy for its unjust enrichment. *Id.* ¶¶ 90-91. "'Restitution is appropriate only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [one] to retain it.'" *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 643 (2013) (quoting *Keller v. O'Brien*, 425 Mass. 774, 778 (1997)). Cases may exist where "'the remedy for unjust enrichment gives the plaintiff something—typically, the defendant's wrongful gain—that the plaintiff did not previously possess.'" *Lanier v. President & Fellows of Harvard College*, 490 Mass. 37, 69 (2022) (Budd, C.J., concurring) (citation omitted). The alleged profit from InMarket's sale of the plaintiffs' data is such a benefit. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020) (for purposes of standing, finding injury where plaintiffs alleged that Facebook "unjustly earned" profits from "their personal information" without their consent and California law permitted disgorgement); *Murphy v. Kochava Inc.*, No. 23-cv-58-BLW, 2023 WL 6391061, at *6 (D. Idaho Oct. 2, 2023) (denying dismissal of unjust enrichment claim because "[a]llowing [defendant] to reap the benefits of violating consumers' privacy . . . would be inequitable," where the plaintiffs alleged that the defendant "earned some amount of profit by selling [their geolocation] data").

Finally, the plaintiffs sufficiently allege that InMarket knowingly accepted the benefit of their location data without their informed consent. ECF 22, ¶¶ 88-89. While the amended complaint alleges that third-party applications with InMarket SDK track a user's location data only "[i]f the user allows access," *id.* ¶ 46, it also repeatedly alleges that the plaintiffs did not provide

14

informed consent, through these applications, for *InMarket* to *collect and sell* their geolocation data, *id.* ¶¶ 2, 9, 14, 53, 62, 74. It is true that the amended complaint does not identify which third-party applications the plaintiffs downloaded. This omission, however, does not render implausible their allegations that InMarket lacked consent to share their data from those applications. According to the amended complaint, these applications did not adequately disclose the scope of the data that they were collecting, nor could they because InMarket does not provide their developers with the information needed to make such disclosures. *Id.* ¶¶ 35-37, 51-52. Thus, regardless of the affiliate application, the plaintiffs allegedly could not have provided informed consent.

In sum, the amended complaint plausibly states a claim of unjust enrichment by alleging that InMarket knowingly profited from the plaintiffs' geolocation data without their permission. This claim will not, accordingly, be dismissed. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D. Cal. 2021) (denying motion to dismiss claim "alleging that [defendant] unjustly benefited from the use of [plaintiff's] location data" that "he never agreed to share"); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021) ("Plaintiffs plausibly allege that Google received a benefit from its collection and storage of comprehensive location data and that its retention of that benefit was unjust.").

B.  Chapter 93A Claim.

InMarket also argues that Count II fails to adequately allege a claim under Chapter 93A. Section 2 of Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). The statute does not define what qualifies as an unfair or deceptive act or practice. But Massachusetts courts have held that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law,

15

statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)); *see Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 316 (2018). And an act or practice is deceptive "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Walsh*, 821 F.3d at 160 (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)).

Section 9 of Chapter 93A, in turn, authorizes consumers to bring an action for unfair or deceptive acts or practices. M.G.L. c. 93A, § 9.[6] To state a claim under section 9, the plaintiffs must plausibly allege "(1) that [InMarket] has committed a violation of G.L. c. 93A, § 2; (2) injury; and (3) a causal connection between the injury suffered and [InMarket's] unfair or deceptive method, act, or practice." *Herman v. Admit One Ticket Agency LLC*, 454 Mass. 611, 615-16 (2009). InMarket contests all three elements, to no avail. First, the amended complaint plausibly alleges that InMarket committed an unfair or deceptive act. Instructive here, the Supreme Judicial Court has held that a merchant's unlawful and deceptive recording of a consumer's zip code was "an invasion of the consumer's personal privacy" that violated section 2 of Chapter 93A. *Tyler*, 464 Mass. at 495, 504 n.20. The plaintiffs similarly allege that InMarket improperly obtained and sold their geolocation data without their informed consent. ECF 22, ¶¶ 2, 103-05.[7] Like the consumer

---

[6] Section 9 also requires consumer plaintiffs to issue written demands to defendants at least thirty days before filing a claim. M.G.L. c. 93A, § 9(3). InMarket does not dispute that the plaintiffs properly served it with a written demand. *See* ECF 22, ¶ 116; ECF 22-1 (demand letter).

[7] InMarket again points to a single allegation in the amended complaint that third-party applications containing InMarket SDK only track a user's location data "[i]f the user allows access" to challenge the plaintiffs' assertion that they did not consent. ECF 22, ¶ 46. But, as explained, the plaintiffs repeatedly allege that, through those applications, InMarket collected and shared their geolocation data without their informed consent. *Id.* ¶¶ 2, 9, 14, 53, 62, 74, 104, 107.

16

in *Tyler* who provided her zip code "under the mistaken impression that she was required to do so" and did not agree to receive the store's marketing materials at her house, *see* 464 Mass. at 493, the plaintiffs in this case downloaded third-party mobile applications embedded with InMarket SDK without knowing about or consenting to the collection and transmission of their data, ECF 22, ¶¶ 11, 13-14. Such a "loss" or "invasion of privacy" is cognizable under section 2. *Id.* ¶ 72; *see Nightingale v. Nat'l Grid USA Serv. Co., Inc*, 107 F.4th 1, 8 (1st Cir. 2024) (citing *Tyler*, 464 Mass. at 495).

Second, the amended complaint adequately alleges that the plaintiffs were harmed by InMarket's misappropriation and sale of their location data without their consent. They need not, as InMarket contends, have paid for the third-party applications or explain how, and at what price, they would sell their location data. In *Tyler*, the Supreme Judicial Court recognized that "the merchant's sale of a customer's [improperly acquired] personal identification information or the data obtained from that information to a third party" is a cognizable injury under section 9 of Chapter 93A. 464 Mass. at 504. Under these circumstances, it explained, "the harm comes from the merchant's disclosure of the consumer's private information on the open market," and "[d]isgorgement of the merchant's profits may provide an appropriate means of calculating damages." *Id.* at 504 n.20; *see Hershenow v. Enter. Rent-a-Car Co. of Bos., Inc.*, 445 Mass. 790, 799 (2006) (Chapter 93A injury includes "the invasion of any legally protected interest of another" (quotation marks omitted)). In this case, the plaintiffs similarly allege that they were harmed and seek disgorgement. ECF 22, ¶¶ 107, 110-12. Had they known that InMarket was selling their data, they would also have allegedly stopped using the affiliate applications or sought compensation for their geolocation data. *Id.* ¶ 106. These factual allegations are sufficient to state a valid injury under section 9.

Third, the amended complaint sufficiently alleges a causal connection between the plaintiffs' injury and InMarket's unfair or deceptive act. As the Supreme Judicial Court concluded in *Tyler*, "by selling the information for a profit, the merchant . . . *caused* the consumer an injury that is . . . cognizable under G.L. c. 93A, § 9." 464 Mass. at 504 (emphasis added). While the plaintiffs did not have a direct relationship with InMarket, ECF 30, at 20, they allege that InMarket nonetheless caused them harm by misappropriating and selling their geolocation data, ECF 22, ¶ 107. This satisfies the causation requirement. In short, because the plaintiffs sufficiently state a claim under Chapter 93A, Count II will not be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, InMarket's motion to dismiss the amended complaint, ECF 29, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2025